UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
                                    )
**MICHAEL L. DEEGAN,**              )
    Plaintiff,    )
                                    )
    v.            )    Civil Action No. 09-1649 (RCL)
                                    )
**STRATEGIC AZIMUTH LLC,** *et al.*,)
    Defendants.   )
                                    )
_____)

**MEMORANDUM OPINION**

Before the Court are defendants' Motion to Dismiss Plaintiff's Complaint, Nov. 11, 2009, ECF No. 2, and plaintiff's Motion for Ancillary Relief Under Fed. R. Civ. P. 64 (Replevin and Attachment of Reality Mobile Software and License), Jan. 12, 2010, ECF No. 7. Upon consideration of defendant's Motion to Dismiss Plaintiff's Complaint, the opposition thereto, Nov. 20, 2009, ECF No. 4, the reply brief, Dec. 9, 2009, ECF No. 5, applicable law, and the record in this case, the Court will grant in part and deny in part the motion. Upon consideration of plaintiff's Motion for Ancillary Relief, the lack of opposition thereto, applicable law, and the record in this case, the Court will deny the motion.

    **I.**    **BACKGROUND**

In his complaint, plaintiff alleges the following facts. In January 2009, defendants Timothy Anthony and Sean McKenna and others formed a limited liability company called Strategic Azimuth, LLC. Compl. ¶ 2, Aug. 28, 2009, ECF No. 1. Strategic Azimuth's goal would be to "pursu[e] a government contracting business focused on medical training for the military in Afghanistan or elsewhere for the federal government." *Id.* In February 2009, plaintiff and

1

defendants Anthony and McKenna discussed a Teaming Agreement between Strategic Azimuth and Cougar Consulting, LLC—a company of which plaintiff is 49% owner. *Id.* ¶ 4. Defendants Anthony and McKenna "agreed to act in accordance with its terms," but never signed the Teaming Agreement. *Id.* ¶ 5.

In April 2009, plaintiff told defendants Anthony and McKenna that he had investigated and begun the development of a system "designed by plaintiff, which would give the United States military or private contractors the capability to see in real time, and to track, from any location outside of Afghanistan, the movements of trucks and other vehicles inside Afghanistan which were deployed there by the U.S. military and its allies to move equipment, supplies and personnel through that country." *Id.* ¶¶ 7, 10. "Plaintiff put together that system, in confidence, from pre-existing commercial, off-the-shelf, components and software, which he refashioned to create a new IT system that could compete successfully with existing systems designed for similar purposes." *Id.* ¶ 10. The system came to be known as "SAVAT," an acronym for "Situational Awareness Video Asset Tracker." *Id.* ¶ 11. Plaintiff designed a promotional brochure for SAVAT, the cover of which bore the words: "Strictly Confidential and Proprietary." *Id.*

Plaintiff obtained a license from a company called Reality Mobile to use their software as part of the SAVAT system, thus giving plaintiff and Strategic Azimuth the right to use the software. *Id.* ¶ 12. Plaintiff invested approximately $9,500 of his own funds to pay for the license. *Id.*

On June 26, 2009, plaintiff and defendants Anthony and McKenna entered into a Joint Venture Agreement, in which they agreed to form a company called Astro Azimuth, LLC. *Id.* ¶ 6. Plaintiff and defendants Anthony and McKenna each owned 16.6% of the joint venture, and

Astro Systems, Inc.—an expert in the business of systems integration—owned the remaining 50% of the joint venture. *Id.* ¶ 6, 13. The purpose of the joint venture was to develop and sell the SAVAT system. *Id.* ¶ 7. Plaintiff introduced the SAVAT system to principals of a company called The Sandi Group, and through that company made plans to sell and distribute the SAVAT system in Saudi Arabia. *Id.* ¶ 14.

On July 28, 2009, the wives of defendants Anthony and McKenna formed a company called Symmetry Group, LLC. *Id.* ¶ 3. Plaintiff was not a member of this company. *Id.* ¶ 15. Plaintiff's license from Reality Mobile was placed in the name of the Symmetry Group. *Id.* "Defendants advised principals of Astro Systems and the Sandi Group that they did not intend to proceed with the plaintiff as a part of the joint venture and that they would market the SAVAT system themselves through their own company." *Id.*

Plaintiff alleges that defendants' actions were "a breach of the fiduciary duties owed to the plaintiff by the defendants arising not only from the Joint Venture Agreement executed by the parties on June 26, 2009; but also from their relationship as joint venturers throughout their dealings with each other." *Id.* ¶ 16. Plaintiff also alleges that defendants "have misappropriated the SAVAT system and the SAVAT product developed by the plaintiff and belonging to him as confidential and proprietary," in violation of North Carolina law, N.C. Gen. Stat. §§ 66-152, *et seq.*, District of Columbia law, D.C. Code §§ 36-401, *et seq.*, and Maryland law, Md. Code Ann., Com. Law, §§ 11-1201, *et seq. Id.* ¶ 17.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim

3

showing that the pleader is entitled to relief." It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In a motion to dismiss, the court "must take all of the factual allegations in the complaint as true." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III. DISCUSSION

### A. THE COURT WILL GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT.

#### 1. The Court Will Grant Defendants' Motion to Dismiss Plaintiff's Misappropriation Claim Arising Under North Carolina Law.

*a. Legal Standard*

Under North Carolina law, the "owner of a trade secret" has a "remedy by civil action for misappropriation of his trade secret." N.C. Gen. Stat. § 66-153. "Misappropriation" is defined as "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse

showing that the pleader is entitled to relief." It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In a motion to dismiss, the court "must take all of the factual allegations in the complaint as true." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III. DISCUSSION

### A. THE COURT WILL GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT.

#### 1. The Court Will Grant Defendants' Motion to Dismiss Plaintiff's Misappropriation Claim Arising Under North Carolina Law.

*a. Legal Standard*

Under North Carolina law, the "owner of a trade secret" has a "remedy by civil action for misappropriation of his trade secret." N.C. Gen. Stat. § 66-153. "Misappropriation" is defined as "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse

engineering, or was obtained from another person with a right to disclose the trade secret." N.C. Gen. Stat. § 66-152(1). To establish a prima facie case of misappropriation, plaintiff must introduce "substantial evidence" that defendants: "(1) Know[] or should have known of the trade secret; and (2) Ha[ve] had a specific opportunity to acquire it for disclosure or use or ha[ve] acquired, disclosed, or used it without the express or implied consent or authority of the owner." N.C. Gen. Stat. § 66-155. "The threshold question in any misappropriation of trade secrets case is whether the information obtained constitutes a trade secret." *Combs & Assoc. v. Kennedy*, 555 S.E.2d 634, 639 (N.C. Ct. App. 2001).

> A "trade secret" is defined as
>
> business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:
> a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and
> b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C. Gen. Stat. § 66-152(3). North Carolina courts consider six factors when determining whether information constitutes a trade secret:

> (1) the extent to which the information is known outside the business; (2) the extent to which it is known to employees and others involved in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of information to business and its competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could properly be acquired or duplicated by others.

*Combs*, 555 S.E.2d at 640. "The existence of a trade secret shall not be negated merely because the information comprising the trade secret has also been developed, used, or owned independently by more than one person, or licensed to other persons." N.C. Gen. Stat. § 66-152.

> To maintain an action for misappropriation of a trade secret, a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur. Thus, a complaint that makes general

5

> allegations in sweeping and conclusory statements, without specifically identifying the trade secrets allegedly misappropriated, is insufficient to state a claim for misappropriation of trade secrets.

*Stephenson v. Langdon*, 699 S.E.2d 140, at * 5 (N.C. Ct. App. 2010) (citations and internal quotations omitted).

### b. Analysis

The Court cannot reasonably infer that this information constitutes a trade secret under North Carolina law. First, the Court finds that, based on the pleadings, it is plausible that the SAVAT system "[d]erives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use." N.C. Gen. Stat. § 66-152(3)(a). Defendants claim that they deny plaintiff's assertion that the information at issue was not generally known or readily ascertainable. Defs.' Mot. 7. But in support of their claim, defendants only state that plaintiff "has not sufficiently defined or identified his alleged trade secrets." *Id.* at 8. Defendants do not provide any support for their denial of plaintiff's assertion. Plaintiff has alleged that he put together the SAVAT system "in confidence, from pre-existing commercial, off-the-shelf, components and software, which he refashioned to create a new IT system that could compete successfully with existing systems designed for similar purposes." Compl. ¶ 10. He has further alleged that The Sandi Group planned to purchase and distribute the SAVAT system in Saudi Arabia. *Id.* ¶ 14. It is plausible that these allegations show that the SAVAT system had commercial value to companies such as The Sandi Group, and that the SAVAT system had such commercial value because it was an IT system, developed in confidence, that was not generally known or readily ascertainable. Further, the Court disagrees with defendants' claim that plaintiff did not sufficiently define his alleged trade secret. He defined his trade secret as the SAVAT system.

Second, the Court finds that, based on the pleadings, it is not plausible that the SAVAT system was "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." N.C. Gen. Stat. § 66-152(3)(b). Plaintiff's only allegation of attempting to maintain the secrecy of the SAVAT system is that an "early brochure" to promote SAVAT bears on its cover the words "Strictly Confidential and Proprietary." Compl. ¶ 11. The Court questions whether a simple notation of "strictly confidential" on a document is enough to reasonably maintain the secrecy of the contents of that document. Further, plaintiff has only produced evidence showing that he affixed the "strictly confidential" label to SAVAT information sent out to third parties in early marketing efforts; he has not shown that he affixed any such label to SAVAT information sent to defendants or to later prospective clients. Plaintiff alleges that he put together the SAVAT system "in confidence," *id.* ¶ 10, but he apparently shared that confidential system with defendants without requiring any kind of confidentiality agreement first. Thus, plaintiff does not allege that he took any reasonable steps to maintain the secrecy of the system with respect to defendants or even to a prospective client such as The Sandi Group.

In his opposition to the motion to dismiss, plaintiff also alerted the Court to several Non-Disclosure Agreements governing the dissemination of information concerning the SAVAT system. Pl.'s Opp'n 2 & Exs. 1–2. But the Court may not consider that information for purposes of a Rule 12(b)(6) motion to dismiss. Under Federal Rule of Civil Procedure 12(d), the Court must treat a Rule 12(b)(6) motion to dismiss as a Rule 56 motion for summary judgment if (1) "matters outside the pleadings are presented to and not excluded by the court" and (2) all parties have been "given a reasonable opportunity to present all the material that is pertinent to the motion." The Court finds that the parties have not been given a reasonable opportunity to present all of the material that would be pertinent to a summary judgment motion. Indeed, defendants

7

have not submitted any exhibits to the Court. Thus, the Court cannot consider any matters other than the pleadings. An opposition to a motion for summary judgment is not a pleading. *See* Fed. R. Civ. P. 7(a). For purposes of this motion, therefore, the Court will not consider the Non-Disclosure Agreements.

The Court notes, however, that even if it were to consider these Non-Disclosure Agreements, the Court would likely still dismiss this claim. Although these Non-Disclosure Agreements may be sufficient for plaintiff to allege that the SAVAT system is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy," N.C. Gen. Stat. § 66-152(3), these Agreements create a serious issue over who owns the trade secret. Under North Carolina law, only the "owner of a trade secret" may bring an action for misappropriation of that trade secret. N.C. Gen. Stat. § 66-153. These Agreements may indicate that Strategic Azimuth LLC is actually the owner of the trade secret, not plaintiff. The Court need not accept as true plaintiff's legal conclusion that the system is "proprietary" to him. *Ashcroft*, 129 S. Ct. at 1949. If plaintiff were not the owner of the trade secret, then plaintiff could not bring an action for misappropriation, so the Court would have to dismiss this claim.

Because plaintiff has not sufficiently alleged the existence of a trade secret, plaintiff has failed to state a claim for misappropriation of a trade secret under North Carolina law. Accordingly, the Court will grant defendants' motion to dismiss this claim.

### 2. The Court Will Grant Defendants' Motion to Dismiss Plaintiff's Misappropriation Claim Arising Under District of Columbia Law.

#### a. *Legal Standard*

Under District of Columbia law, a "trade secret" is defined as:

information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

8

(A) Derives actual or potential independent economic value, from not being generally known to, and not being readily ascertainable by, proper means by another who can obtain economic value from its disclosure or use; and
(B) Is the subject of reasonable efforts to maintain its secrecy.

D.C. Code § 36-401(4). "Misappropriation" is defined as:

(A) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
(B) Disclosure or use of a trade secret of another without express or implied consent by a person who:
    (i) Used improper means to acquire knowledge of the trade secret; or
    (ii) At the time of disclosure or use, knew or had reason to know that the trade secret was:
        (I) Derived from or through a person who had utilized improper means to acquire it;
        (II) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;
        (III) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
    (iii) Before a material change in his or her position, knew or had reason to know that the information was a trade secret and knowledge of the trade secret had been acquired by accident or mistake.

D.C. Code § 36-401(2). "Improper means" is defined as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." D.C. Code § 36-401(1).

### *b. Analysis*

The Court finds that the definition of a "trade secret" is very similar under North Carolina law and District of Columbia law. For the same reasons as those stated above, the Court finds that, based on the pleadings, it is not plausible that the SAVAT system was "the subject of reasonable efforts to maintain its secrecy." D.C. Code § 36-401(4)(B). Because there was no trade secret, plaintiff has failed to state a claim for misappropriation of a trade secret under District of Columbia law. Accordingly, the Court will grant defendants' motion to dismiss this claim.

### 3. The Court Will Grant Defendants' Motion to Dismiss Plaintiff's Misappropriation Claim Arising Under Maryland Law.

### a. Legal Standard

Under Maryland law, a "trade secret" is defined as:

information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
    (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
    (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Md. Code. Ann., Com. Law, § 11-1201(e). "Misappropriation" is defined as:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
(2) Disclosure or use of a trade secret of another without express or implied consent by a person who:
    (i) Used improper means to acquire knowledge of the trade secret; or
    (ii) At the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:
        1. Derived from or through a person who had utilized improper means to acquire it;
        2. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
        3. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
    (iii) Before a material change of the person's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Md. Code. Ann., Com. Law, § 11-1201(c). "Improper means" is defined as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." Md. Code. Ann., Com. Law, § 11-1201(b).

### b. Analysis

The Court finds that the definition of a "trade secret" is very similar under North Carolina law and Maryland law. For the same reasons as those stated above, the Court finds that, based on the pleadings, it is not plausible that the SAVAT system was "the subject of reasonable efforts to maintain its secrecy." Md. Code. Ann., Com. Law, § 11-1201(e)(2). Because there was no trade

secret, plaintiff has failed to state a claim for misappropriation of a trade secret under Maryland law. Accordingly, the Court will grant defendants' motion to dismiss this claim.

### 4. The Court Will Deny Defendants' Motion to Dismiss on Other Grounds Plaintiff's Complaint.

In his complaint, plaintiff alleges two types of claim: (1) breach of fiduciary duties, and (2) misappropriation, in violation of North Carolina, District of Columbia, and Maryland law. Compl. ¶¶ 16–17. In their motion to dismiss, defendants move to dismiss the case pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defs.' Mot. 1. But defendants provide no support for—and, indeed, do not even mention after the first page—their motion to dismiss the case for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) or their motion to dismiss the breach of fiduciary duty claim pursuant to Rule 12(b)(6).

First, even if defendants had not made a Rule 12(b)(1) motion, the Court would be obligated to determine *sua sponte* that it had subject-matter jurisdiction over the case before proceeding to any adjudication of the merits. Fed. R. Civ. P. 12(h)(3). Based on the allegations in the complaint, the Court is satisfied that it has subject-matter jurisdiction over this case. Plaintiff has alleged that there is complete diversity of citizenship between the parties and that the matter in controversy exceeds the sum of $75,000, in satisfaction of 28 U.S.C. § 1332. Defendants have not disputed these allegations. Thus, the Court will deny defendants' motion to dismiss pursuant to Rule 12(b)(1).

Second, the Court finds that although defendants claim to have moved to dismiss the entire complaint pursuant to Rule 12(b)(6), they essentially only moved to dismiss the misappropriation claims. They did not even mention the breach of fiduciary duty claim in their motion or their reply, so they effectively did not move to dismiss this claim. Further, the Court will not dismiss the claim *sua sponte*. The Court will only dismiss a claim *sua sponte* under rule

12(b)(6) if "the plaintiff cannot possibly win relief." *Best v. Kelly*, 39 F.3d 328, 331 (D.C. Cir. 1994). The Court cannot find that plaintiff's allegations are so frivolous as to meet that standard. Thus, the Court will not dismiss plaintiff's claim for breach of fiduciary duties.

### B. THE COURT WILL DENY PLAINTIFF'S MOTION FOR ANCILLARY RELIEF.

Plaintiff moves for ancillary relief pursuant to Federal Rule of Civil Procedure 64. He move for the Court to (1) require defendants "to transfer to him his personal property by replevin," or (b) in the alternative, order the Clerk of Court to issue a pre-judgment writ of attachment.[1] Pl.'s Mot. 1, ECF No. 7.

#### *a. Legal Standard*

Federal Rule of Civil Procedure 64 provides: "At the commencement of and throughout the action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies." Because the Court is located in the District of Columbia, the Court will look to D.C. law to determine whether plaintiff is entitled to either of his requested pre-judgment remedies.

D.C. Code §§ 16-3701 *et seq.* govern actions for replevin.

> A complaint in replevin shall be in the following or equivalent form: "The plaintiff sues the defendant for (wrongly taking and detaining) (unjustly detaining) the plaintiff's goods and chattels, to wit: (describe them) of the value of ___ dollars. And the plaintiff claims that the same be taken from the defendant and delivered to him; or, if they are eloigned, that he may have judgment of their value and all mesne profits and damages, which he estimates at ___ dollars, besides costs."

D.C. Code § 16-3702.

---

[1] Plaintiff moves for a writ of attachment pursuant to Federal Rule of Civil Procedure 70(c). Rule 70, however, applies to enforcement of judgments. Because plaintiff does not have a judgment, he cannot seek to enforce a judgment pursuant to Rule 70. Thus, the Court will apply Rule 64—governing remedies available throughout an action—to plaintiff's request.

12

At the time of filing a complaint in replevin, the plaintiff, his agent, or attorney shall file an affidavit stating that—
(1) according to affiant's information and belief, the plaintiff is entitled to recover possession of chattels proposed to be replevied, being the same described in the complaint;
(2) the defendant has seized and detained or detains the chattels; and
(3) the chattels were not subject to the seizure or detention and were not taken upon a writ of replevin between the parties.

D.C. Code § 16-3703.

D.C. Code §§ 16-501 *et seq.* govern pre-judgment attachment. Plaintiff may file an affidavit seeking attachment "either at the commencement of the action or pending the action." D.C. Code § 16-501.

(c) The affidavit shall comply with the following requirements:
(1) show the grounds of plaintiff's claim;
(2) set forth that plaintiff has a just right to recover what is claimed in his complaint;
(3) where the action is to recover specific personal property, state the nature and, according to affiant's belief, the value of the property and the probable amount of damages to which plaintiff is entitled for the detention thereof;
(4) where the action is to recover a debt, state the amount thereof; and
(5) where the action is to recover damages for breach of a contract set out, specifically and in detail, the breach complained of and the actual damage resulting therefrom.
(d) The affidavit shall also state one of the following facts with respect to defendant:
(1) defendant is a foreign corporation or is not a resident of the District, or has been absent therefrom for at least six months;
(2) he evades the service of ordinary process by concealing himself or temporarily withdrawing himself from the District;
(3) he has removed or is about to remove some or all of his property from the District, so as to defeat just demands against him;
(4) he has assigned, conveyed, disposed of, or secreted, or is about to assign, convey, dispose of, or secrete his property with intent to hinder, delay, or defraud his creditors; or
(5) he fraudulently contracted the debt or incurred the obligation respecting which the action is brought.
(e) Before a writ of attachment and garnishment is issued, the plaintiff shall first file in the clerk's office a bond, executed by himself or his agent, with security to be approved by the clerk, in twice the amount of his claim, conditioned to make good to the defendant all costs and damages which he may sustain by reason of the wrongful suing out of the attachment; except that in any case in which the plaintiff states in his affidavit that the value of specified property to be levied upon is less than the amount of his claim, the court may set the amount of such bond in an amount twice the value of the property being attached, and, notwithstanding the provisions of subsection (f) of this section, only the property so specified shall be levied upon; provided, that the United States marshal may, in his discretion, when levying upon such property, have the same appraised by an

13

independent appraiser retained by the marshal at the expense of the plaintiff. Any such appraisal shall be made at the time the marshal levies upon the property, and the appraiser shall accompany him for such purpose. If such appraisal has been made, then only such property as may have a value not exceeding one-half of the amount of the bond shall be attached. In the event the appraised value of the property shall be more than one-half of the amount of the bond, the marshal may refuse to execute the writ unless and until the amount of the bond is increased so as to be at least twice the value of the property to be attached.

*Id.*

### b. Analysis

First, the Court will not require defendants to transfer property to plaintiff via replevin. Replevin is a cause of action, and the D.C. Code requires a complaint in replevin. Plaintiff has not filed any such complaint. Further, the D.C. Code is very particular about how any complaint in replevin must be phrased. D.C. Code § 16-3702. Plaintiff did not use any of that required language in his complaint. Because plaintiff has not filed a complaint in replevin, the Court cannot consider the merits of any such action in replevin.

Second, the Court will not order the Clerk of Court to issue a pre-judgment writ of attachment. First, plaintiff's affidavit fails to comply with the requirements of D.C. Code § 16-501(c). The affidavit sets forth neither (1) the grounds of his claim—that is, for breach of fiduciary duty, or for the now-dismissed misappropriation of trade secrets—nor (2) that plaintiff has a just right to recover what he claims in his complaint. Second, plaintiff has not filed any bond in the clerk's office, as required by D.C. Code § 16-501(e).

Accordingly, the Court will deny plaintiff's motion for ancillary relief.

### IV. <u>CONCLUSION</u>

For the reasons stated, the Court will grant in part and deny in part defendants' Motion to Dismiss Plaintiff's Complaint, ECF No. 2. Specifically, the Court will (1) grant defendants' motion to dismiss plaintiff's misappropriation claims arising under North Carolina, District of

Columbia, and Maryland law, (2) deny defendants' motion to dismiss plaintiff's breach of fiduciary duty claim, and (3) deny defendants' motion to dismiss this case for lack of subject-matter jurisdiction. The Court will deny plaintiff's Motion for Ancillary Relief, ECF No. 7.

A separate order consistent with this memorandum opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on March 7, 2011.